1  **HUNTER PYLE, SBN 191125**
   HUNTER PYLE LAW
2  428 Thirteenth Street, 11th Floor
   Oakland, California 94612
3  Telephone: (510) 444-4400
4  Facsimile: (510) 444-4410
   hunter@hunterpylelaw.com
5
   Attorneys for Plaintiff
6  CHAD FITE

7                    **UNITED STATES DISTRICT COURT**
8
                     **NORTHERN DISTRICT OF CALIFORNIA**
9

| | |
|---|---|
| CHAD FITE, | CASE NO.: |
| Plaintiff, | **COMPLAINT** |
| vs. | 1. **UNLAWFUL USE OF CONSUMER CREDIT REPORT (Labor Code § 1024.5);** |
| DATAROBOT, INC. | 2. **VIOLATION OF THE CONSUMER CREDIT REPORTING AGENCIES ACT (Civil Code § 1785.20.5);** |
| Defendant. | 3. **DISABILITY DISCRIMINATION (FEHA);** |
| | 4. **FAILURE TO ENGAGE IN THE INTERACTIVE PROCESS (FEHA);** |
| | 5. **WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY;** |
| | 6. **FAILURE TO PAY ALL WAGES DUE (Labor Code §§ 1182.11-1182.13, 1194, and 1194.2);** |
| | 7. **FAILURE TO REIMBURSE BUSINESS EXPENSES (Labor Code § 2802); and** |
| | 8. **FAILURE TO PAY WAGES UPON TERMINATION (Labor Code § 203).** |
| | **DEMAND FOR JURY TRIAL** |

---

*FITE v. DATAROBOT*
**COMPLAINT AND DEMAND FOR JURY TRIAL**

# I. INTRODUCTION

1. Defendant DATAROBOT, INC. ("DATAROBOT") hired plaintiff CHAD FITE ("Plaintiff") as its AI Success Director. Plaintiff's employment with DATAROBOT commenced on April 29, 2019.

2. DATAROBOT ran an illegal credit report on Plaintiff in violation of California law.

3. Plaintiff informed DATAROBOT that he was disabled. Plaintiff also requested that DATAROBOT reimburse him for the cost of a meal that he ate while attending training in Massachusetts.

4. DATAROBOT terminated Plaintiff on May 6, 2019, eight days after Plaintiff commenced employment.

5. Plaintiff brings this action against DATAROBOT alleging the following claims: 1) Unlawful Use of Credit Report; 2) Violation of the Consumer Credit Reporting Agencies Act ("CCRAA"); 3) Disability Discrimination in violation of the Fair Employment and Housing Act (FEHA); 4) Failure to Engage in the Interactive Process in violation of the FEHA; 5) Wrongful Termination in Violation of Public Policy; 6) Failure to Pay Wages Due; 7) Failure to Reimburse for Business Expenses; and 8) Failure to Pay Wages upon Termination.

# II. PARTIES

6. Plaintiff is a resident of Lafayette, California in the County of Contra Costa. DATAROBOT employed Plaintiff as an AI Success Director working out of its San Francisco office.

7. Upon information and belief, DATAROBOT is a corporation. DATAROBOT's headquarters is in Boston, Massachusetts.

# III. JURISDICTION AND VENUE

8. This Court has diversity jurisdiction over this action pursuant to 28 U.S.C. section 1332. In addition, this Court has supplemental jurisdiction under 28 U.S.C. section 1367 over Plaintiff's state law claims, because those claims derive from a common nucleus of operative fact.

//

9. This Court also has federal question jurisdiction over this action pursuant to 28 U.S.C. section 1331.

10. This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. sections 2201 and 2202.

11. Venue is proper in the United States District Court for the Northern District of California pursuant to 28 U.S.C. section 1391(b)(1) because DATAROBOT "resides" in this district. See 28 U.S.C. § 1391(c)(2). Specifically, the United States District Court for the Northern District of California has personal jurisdiction over DATAROBOT because DATAROBOT is registered with the California Secretary of State to do business and is doing business in California, and in this district.

12. Venue is also proper in the United States District Court for the Northern District of California pursuant to 28 U.S.C. section 1391(b)(2) because a substantial part of the events and omissions giving rise to the claims in this case occurred in this district. Specifically, DATAROBOT hired Plaintiff to work out of its San Francisco office, and Plaintiff worked out of that office until his termination.

13. The amount in controversy exceeds $75,000.

**Intradistrict Assignment**

14. Intradistrict assignment to the Oakland or San Francisco Division is proper pursuant to Local Rule 3-2(d) because a substantial part of the events giving rise to this action occurred in Contra Costa County.

**IV.   EXHAUSTION OF ADMINSTRATIVE REMEDIES**

15. Plaintiff has exhausted the applicable remedies available to him under the FEHA by timely filing a complaint regarding the matters described below with the DFEH on February 5, 2020. The DFEH issued a Notice of Case Closure and Right to Sue letter to Plaintiff that same day.

**V.   STATEMENT OF THE CASE**

16. In January 2018, Andrew Harrison, DATAROBOT's Executive Vice President of Strategy reached out to Plaintiff. Mr. Harrison stated that DATAROBOT was interested in hiring

employees for its AI Success Manager team, and that Plaintiff might be a good fit.  In subsequent messages, Mr. Harrison and Plaintiff discussed the possibility of Plaintiff assuming the position of AI Success Director in San Francisco.

17. Shortly thereafter Plaintiff received an invitation to an interview with Paul Auffermann, Head of AI Success.  That interview happened by videoconference on February 15, 2019.  The interview went well.  Mr. Auffermann indicated that DATAROBOT had an office in San Francisco, and that the AI Success Director could work out of that office.  At the end of that videoconference, Mr. Auffermann said that he had enjoyed the conversation and would like Plaintiff to speak to a few more people at DATAROBOT.

18. In the months that followed Plaintiff met with several other people associated with DATAROBOT.  On February 26, 2019, Plaintiff interviewed by videoconference with Razi Raziuddin, Senior Vice President, AI Services.  On February 28, 2019, Plaintiff met by videoconference with Jeff Schwartz, Vice President, and Mr. Raziuddin.

19. On March 6, 2019, Plaintiff met with Gourab De, Vice President, Customer Facing Data Science, in DATAROBOT's San Francisco office.  That meeting went well.  The next meeting was with Yong Kim, Data Science Practice, West Regional Lead, by videoconference on March 22, 2019.

20. On March 27, 2019, Plaintiff met by videoconference with Ofer Goldstein, Customer Facing Data Scientist.  At the end of that meeting, Mr. Goldstein indicated that he had been trying to see how Plaintiff reacted to difficult questions.  He further stated that he was impressed with Plaintiff's performance.

21. On March 29, 2019, Plaintiff met by videoconference with Rishabh Raman, Data Scientist.  That meeting also went well.

22. The next meeting was with Marcus Braun, Director of AI Services, on April 3, 2019.  During that meeting, they reviewed some hypothetical scenarios and how best to leverage DATAROBOT's software to benefit the client.  That interview also went well, and Mr. Braun complimented Plaintiff on his performance.

23. In the meantime, Plaintiff had received an employment offer from another company named Pathrise. Pathrise had offered Plaintiff the position of Head of Data at a competitive salary plus a two percent equity share in the company.

24. On April 5, 2019, Plaintiff spoke to Mr. Harrison about DATAROBOT. Mr. Harrison indicated that Plaintiff had done well in the interview process, and that DATAROBOT was trying to figure out what position to offer him.

25. On April 10, 2019, DATAROBOT offered Plaintiff the position of AI Success Director. The base salary offered was $200,000, with $100,000 in incentive cash payment over four quarters, in addition to stock options vested over four years. Plaintiff accepted that offer on April 13, 2019, with a projected start date of April 29.

26. Based on DATAROBOT's offer of employment, Plaintiff turned down the job offer from Pathrise.

27. On April 23, 2019, Mr. Braun asked Plaintiff if he had endured any hardship and if there was anything he should know about Plaintiff. Plaintiff informed Mr. Braun that he had a disability that was being treated and which would not negatively impact his job performance. Upon further questioning by Mr. Braun, Plaintiff elaborated somewhat regarding the nature of his disability.

28. Mr. Braun then asked for additional details, such as when the disability had begun. Plaintiff replied that he would rather not share additional details with Mr. Braun.

29. On April 25, 2019, DATAROBOT informed Plaintiff that he had to be in Boston for orientation on April 29, 2019. Plaintiff performed work for DATAROBOT on April 27 and 28, 2019. Plaintiff then attended the orientation in Boston from April 29, 2019 through May 1, 2019. During that orientation, DATAROBOT instructed Plaintiff to send two emails to Jeremy Achin. As instructed, Plaintiff sent the first email on April 29, 2019. He sent the second email on May 3, 2019.

30. On April 30, 2019, Plaintiff went to dinner with three colleagues who also worked for DATAROBOT. At the conclusion of that dinner, his colleagues recommended that Plaintiff submit the cost of the dinner to DATAROBOT for reimbursement. On May 3, 2019, Plaintiff submitted a

request for reimbursement for the cost of the dinner to DATAROBOT. Plaintiff also requested reimbursement for his airfare, hotel accommodations, and ground transportation.

31. Plaintiff worked for DATAROBOT in California from May 2 through May 6, 2019. DATAROBOT terminated Plaintiff during a conference call on May 6, 2019.

32. DATAROBOT paid Plaintiff $3,030.30 in wages on May 6, 2019. On May 10, 2019, DATAROBOT paid Plaintiff an additional $1515.15. On June 3, 2019, DATAROBOT paid Plaintiff an additional $69.93.

## VI.     CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### UNLAWFUL USE OF CONSUMER CREDIT REPORT
### (Labor Code § 1024.5)

33. The allegations of each of the preceding paragraphs are realleged and incorporated herein by reference.

34. California Labor Code section 1024.5(a) provides that "an employer or prospective employer shall not use a consumer credit report for employment purposes unless the position of the person for whom the report is sought" falls into certain categories of employment.

35. DATAROBOT used a consumer credit report regarding Plaintiff for employment purposes.

36. Plaintiff's position did not fall into any of the categories of employment that are exempt from section 1024.5.

37. Plaintiff was harmed when DATAROBOT used a consumer credit report regarding Plaintiff for employment purposes.

38. DATAROBOT committed the acts alleged herein oppressively and maliciously, with the wrongful intention of injuring Plaintiff, from an evil and improper motive amounting to malice, and in conscious disregard of his rights under the Labor Code, in that DATAROBOT used a consumer credit report regarding Plaintiff for employment purposes. Thus, Plaintiff is entitled to recover punitive damages from DATAROBOT.

//

1    39.    As a proximate result of the acts of DATAROBOT, Plaintiff has suffered damages in an amount according to proof.

WHEREFORE, Plaintiff prays for judgment against DATAROBOT as set forth below.

## SECOND CAUSE OF ACTION
## VIOLATION OF THE CCRAA
## (CIVIL CODE § 1785.20.5)

40.    The allegations of each of the preceding paragraphs are realleged and incorporated herein by reference.

41.    California Civil Code section 1785.20.5(a) provides in pertinent part as follows:

> Prior to requesting a consumer credit report for employment purposes, the user of the report shall provide written notice to the person involved. The notice shall inform the person that a report will be used and shall identify the specific basis under subdivision (a) of Section 1024.5 of the Labor Code for use of the report. The notice shall also inform the person of the source of the report and shall contain a box that the person may check off to receive a copy of the credit report.

42.    California Civil Code section 1785.20.5(b) provides in pertinent part as follows:

> Whenever employment involving a consumer is denied either wholly or partly because of information contained in a consumer credit report from a consumer credit reporting agency, the user of the consumer credit report shall so advise the consumer against whom the adverse action has been taken and supply the name and address or addresses of the consumer credit reporting agency making the report.

43.    DATAROBOT requested a consumer credit report regarding Plaintiff for employment purposes.

44.    DATAROBOT did not inform Plaintiff of the specific basis under subdivision (a) of Section 1024.5 of the Labor Code for which the report would be used. Nor did DATAROBOT inform Plaintiff of the source of the report or provide a box that Plaintiff could check off to receive a copy of the credit report.

//

45.     DATAROBOT denied employment to Plaintiff either wholly or partly because of information contained in a consumer credit report from a consumer credit reporting agency. However, DATAROBOT did not advise Plaintiff of that fact or supply the name and address or addresses of the consumer credit reporting agency making the report.

46.     Plaintiff was harmed by DATAROBOT's actions.

47.     DATAROBOT committed the acts alleged herein willfully, as well as oppressively and maliciously, with the wrongful intention of injuring Plaintiff, from an evil and improper motive amounting to malice, and in conscious disregard of his rights, in that DATAROBOT used a consumer credit report regarding Plaintiff for employment purposes without complying with Civil Code section 1785.20.5.  Thus, Plaintiff is entitled to recover punitive damages from DATAROBOT.

48.     As a proximate result of the acts of DATAROBOT, Plaintiff has suffered damages in an amount according to proof.

WHEREFORE, Plaintiff prays for judgment against DATAROBOT as set forth below.

### THIRD CAUSE OF ACTION
### DISABILITY DISCRIMINATION
### (Government Code § 12940)

49.     The allegations of each of the preceding paragraphs are realleged and incorporated herein by reference.

50.     Plaintiff is and was disabled and is thus a member of a class of persons protected by the FEHA from employment discrimination on the basis of disability.  Plaintiff was disabled under California Government Code section 12926.1(b).  At all relevant times, Plaintiff suffered from various mental illnesses which limited his major life activities, including working.

51.     In the alternative, Plaintiff had a history of disability, and/or DATAROBOT believed that Plaintiff was disabled.

52.     DATAROBOT knew that Plaintiff suffered from these disabilities.

53.     Plaintiff was able to perform the essential job duties with or without reasonable accommodation for his disabilities.

54. Plaintiff's disability was a substantial motivating factor for DATAROBOT's decision to terminate Plaintiff.

55. Plaintiff was harmed when DATAROBOT discriminated against him on the basis of his disability.

56. DATAROBOT's conduct was a substantial factor in causing Plaintiff's harm.

57. DATAROBOT committed the acts alleged herein oppressively and maliciously, with the wrongful intention of injuring Plaintiff, from an evil and improper motive amounting to malice, and in conscious disregard of his rights under the FEHA, in that DATAROBOT discriminated against Plaintiff on the basis of his disability. Thus, Plaintiff is entitled to recover punitive damages from DATAROBOT.

58. As a proximate result of the acts of DATAROBOT, Plaintiff has suffered damages in an amount according to proof.

WHEREFORE, Plaintiff prays for judgment against DATAROBOT as set forth below.

### FOURTH CAUSE OF ACTION
### FAILURE TO ENGAGE IN THE INTERACTIVE PROCESS
### (Government Code § 12940)

59. The allegations of each of the preceding paragraphs are realleged and incorporated herein by reference.

60. California Government Code section 12940(n) provides that it is unlawful for any employer to fail to engage in a timely, good faith, interactive process with the employee to determine effective reasonable accommodations, if any.

61. DATAROBOT knew that Plaintiff had disabilities which substantially limited the following major life activities: working.

62. Plaintiff was willing to participate in an interactive process to determine whether reasonable accommodations could be made so that he would be able to perform his essential job requirements.

63. DATAROBOT failed to engage in a timely, good faith, interactive process with Plaintiff to determine effective reasonable accommodations for his known disabilities, and instead

terminated Plaintiff's employment.

64. As a result of DATAROBOT's failure to engage in the interactive process, Plaintiff was harmed.

65. DATAROBOT's failure to engage in the interactive process was a substantial factor in causing Plaintiff's harm.

66. DATAROBOT committed the acts alleged herein oppressively and maliciously, with the wrongful intention of injuring Plaintiff, from an evil and improper motive amounting to malice, and in conscious disregard of his rights under the FEHA, in that DATAROBOT failed to engage in the interactive process. Thus, Plaintiff is entitled to recover punitive damages from DATAROBOT.

67. As a proximate result of the acts of DATAROBOT, Plaintiff has suffered damages in an amount according to proof.

WHEREFORE, Plaintiff prays for judgment against DATAROBOT as set forth below.

### FIFTH CAUSE OF ACTION
### WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY

68. The allegations of each of the preceding paragraphs are realleged and incorporated herein by reference.

69. Plaintiff sought reimbursement for business expenses under California Labor Code section 2802.

70. "California has a strong public policy that favors the indemnification (and defense) of employees by their employers for claims and liabilities resulting from the employees acts within the course and scope of their employment." Edwards v. Arthur Andersen LLP (2008) 44 Cal.4th 937, 952.

71. Labor Code section 2802 codifies this policy and gives an employee a right to indemnification from his or her employer.

72. DATAROBOT terminated Plaintiff because he requested reimbursement for expenses incurred in the course and scope of his employment.

73. DATAROBOT's actions were wrongful and in contravention of the express public policy of the State of California.

74. As a proximate result of DATAROBOT's actions, Plaintiff has suffered actual, consequential and incidental financial losses, including loss of salary and benefits, and the intangible loss of employment related opportunities in his field and damage to his professional reputation, all in an amount subject to proof at the time of trial.

75. DATAROBOT committed the acts alleged herein oppressively and maliciously, with the wrongful intention of injuring Plaintiff, from an evil and improper motive amounting to malice, and in conscious disregard of his rights under the FEHA, in that DATAROBOT terminated Plaintiff because he requested reimbursement for expenses incurred in the course and scope of his employment.

76. Thus, Plaintiff is entitled to recover punitive damages from DATAROBOT.

WHEREFORE, Plaintiff prays for judgment against DATAROBOT as set forth below.

## SIXTH CAUSE OF ACTION
### FAILURE TO PAY ALL WAGES DUE
### (Labor Code §§ 1182.11-1182.13, 1194 and 1194.2)

77. The allegations of each of the preceding paragraphs are realleged and incorporated herein by reference.

78. Plaintiff was employed by DATAROBOT within the meaning of the Labor Code.

79. At all relevant times, Labor Code sections 1182.11-1182.13 and 1197 were in full force and effect and required that DATAROBOT pay Plaintiff at least the applicable minimum wage for all hours that he was suffered or permitted to work, whether or not Plaintiff was required to do so.

80. DATAROBOT has failed to pay Plaintiff wages as required by law for all hours that he was suffered or permitted to work.

81. As a direct and proximate result of DATAROBOT's acts and/or omissions, Plaintiff has suffered economic damages in amounts to be determined at trial.

82. Labor Code section 1194(a) provides that an employee who has not been paid wages as required by section 1197 may recover the unpaid balance of the full amount of such wages, interest thereon, attorneys' fees and the costs of suit.

83. Labor Code section 1194.2 provides that employees who have not been paid at least minimum wages for their hours worked are entitled to recover liquidated damages in an amount equal to the wages that a defendant unlawfully failed to pay them in amounts according to proof at the time of trial.

WHEREFORE, Plaintiff prays for judgment against DATAROBOT as set forth below.

**SEVENTH CAUSE OF ACTION**
**FAILURE TO INDEMNIFY FOR BUSINESS-RELATED EXPENSES**
**(Labor Code § 2802)**

84. The allegations of each of the preceding paragraphs are realleged and incorporated herein by reference.

85. Labor Code section 2802 provides, in pertinent part: "An employer shall indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties…. For purposes of this section, the term 'necessary expenditures or losses' shall include all reasonable costs, including, but not limited to, attorney's fees incurred by the employee enforcing the rights granted by this section."

86. While acting on discharging his duties for DATAROBOT, Plaintiff incurred work-related business expenses for which DATAROBOT failed to reimburse him.

87. By failing to fully reimburse Plaintiff for his expenses, DATAROBOT violated Labor Code section 2802.

88. As a direct and proximate result of DATAROBOT's unlawful practices and policies, Plaintiff has suffered monetary losses, and are entitled to restitution of all expenses incurred in the performance of his work duties, interest thereon, reasonable attorneys' fees and costs, and all applicable statutory penalties available for DATAROBOT's violations of Labor Code section 2802.

WHEREFORE, Plaintiff prays for judgment against DATAROBOT as set forth below.

**EIGHTH CAUSE OF ACTION**
**FAILURE TO PAY WAGES UPON TERMINATION**
**(Labor Code §§ 201 and 203)**

89. The allegations of each of the preceding paragraphs are realleged and incorporated herein by reference.

90. Labor Code section 201 requires an employer who discharges an employee to pay all compensation due and owing to said employee immediately upon discharge.

91. Labor Code section 203 provides that if an employer willfully fails to pay compensation each day or promptly upon discharge, as required under section 201, then the employer is liable for waiting time penalties in the form of continued compensation for up to 30 workdays.

92. DATAROBOT terminated Plaintiff. DATAROBOT has willfully failed and refused, and continues to willfully fail and refuse, to timely pay compensation and wages owed to Plaintiff. As a result, DATAROBOT is liable to Plaintiff for waiting time penalties under Labor Code section 203.

### VII.   DAMAGES

93. As a proximate result of the conduct of DATAROBOT, Plaintiff has suffered and continues to suffer economic loss.

94. As a further proximate result of the conduct of DATAROBOT, Plaintiff has suffered emotional and mental distress, fear, anxiety, humiliation and embarrassment.

95. Plaintiff was required to retain private counsel to vindicate his rights under law. Plaintiff is therefore entitled to an award of all attorneys' fees incurred in relation to this action for violation of his civil rights.

WHEREFORE, Plaintiff requests relief from DATAROBOT as follows:

1. For compensatory damages for lost past and future wages, earnings, and benefits, according to proof;
2. For general damages for humiliation, mental anguish and emotional distress, according to proof;
3. For consequential damages, according to proof;
4. For actual, punitive, and other damages pursuant to Cal. Civil Code section 1785.31, according to proof;

5. For unpaid wages and wage premiums, including interest thereon, subject to proof at trial;

6. For unreimbursed business expenses, including interest thereon, subject to proof at trial;

7. For waiting time penalties, according to proof;

8. For reasonable attorneys' fees, according to proof;

9. For reasonable costs, according to proof;

10. For interest; and

11. For such other and further relief as the Court may deem just and proper.

Dated: February 10, 2020     HUNTER PYLE LAW

By: /s/ Hunter Pyle
Hunter Pyle

Attorneys for Plaintiff
CHAD FITE

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury trial.

Dated: February 10, 2020                                HUNTER PYLE LAW


                                                        By: __/s/ Hunter Pyle_____
                                                              Hunter Pyle

                                                        Attorneys for Plaintiff
                                                        CHAD FITE